

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NOS. PD-0499-09, PD-0500-09

### STEPHEN BERNARD JONES, Appellant

### v.

### THE STATE OF TEXAS

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

KELLER, P.J., delivered the opinion of the Court in which PRICE, WOMACK, KEASLER, HERVEY, HOLCOMB, and COCHRAN, JJ., joined. MEYERS, and JOHNSON, JJ., dissented.

Appellant applied for two loans. On each loan application, he made three false statements. The State charged appellant, under Texas Penal Code § 32.32, with making false statements to obtain property or credit.[1] The State obtained six convictions—one for each false statement made in each loan application. The court of appeals held that the constitutional protection against double jeopardy limits the State to obtaining one conviction per loan application. We disagree.

---

[1] TEX. PENAL CODE § 32.32(b) (West 2004).

## I. BACKGROUND

In 2005, appellant was employed by Legacy Financial Group, a mortgage company. During this time, he applied for two loans on his own behalf. The loans sought, for two separate residential properties, were for $680,000 and $544,000. On each application, appellant claimed to have two bank accounts that he did not in fact have, and he submitted another person's credit report as his own. The State obtained two indictments (one for each loan application) and each indictment contained three counts (one for each false statement). Appellant was convicted on all counts in both indictments, for a total of six convictions.

Appellant contended on appeal that double jeopardy was violated when the State obtained six convictions. He argued that the State was entitled to obtain only two convictions—one for each loan application.[2] The State relied upon our previous decision in *Cheney v. State*[3] and argued that § 32.32 was analogous to the perjury statute.

The court of appeals agreed with appellant.[4] In arriving at its conclusion, the court first distinguished *Cheney*.[5] The court observed that *Cheney*, in addressing whether § 32.32 was *in pari*

---

[2] In a supplemental brief, appellant claims that the court of appeals erred in retaining two convictions because he completed only one handwritten loan application and therefore should have been convicted of only one offense. In a response letter, the State points out that appellant did not file a cross-petition raising this complaint. The State also contends that appellant did not raise this claim before the court of appeals, and that, in any event, the claim is without merit because his handwritten application was converted into two typed applications. We decline to address the issue raised in appellant's supplemental brief but express no opinion on whether the court of appeals may do so on remand.

[3] 755 S.W.2d 123 (Tex. Crim. App. 1988).

[4] *Jones v. State*, 285 S.W.3d 501, 503-05 (Tex. App.–Fort Worth 2009).

[5] *Jones*, 285 S.W.3d at 503-04.

*materia* with the theft statute, held that the gravamen of a § 32.32 offense was the making of false statements.[6] But, the court of appeals explained, at the time *Cheney* was decided, § 32.32 was a misdemeanor regardless of the value of the loan sought.[7] The court found it significant that, in 2001, the legislature amended § 32.32 to make the degree of the offense dependent upon the value of the loan sought.[8] The court of appeals cited to a passage in *Cheney* that pointed to proof of value as being critical in a theft offense but not required for an offense under § 32.32 at the time.[9] The court of appeals also found *Cheney* to be distinguishable because it did not involve the same issue we face in this case.[10]

After examining the language of § 32.32, § 32.03, and Chapter 32 in general, the court of appeals concluded that § 32.32 was more analogous to a theft offense for unit-of-prosecution purposes than to the crime of perjury.[11] The court pointed out that Chapter 32, unlike the perjury chapter, contains no definition of "statement" and that, just as with theft offenses, offenses under Chapter 32 could sometimes be aggregated into a single offense.[12] The court found it absurd that a person could be penalized separately for three lies when those three lies were focused only on getting

---

[6] *Id.* at 503 (discussing *Cheney*, 755 S.W.2d at 129).

[7] *Id.*

[8] *Id.* at 503-04.

[9] *Id.* at 504, 504 n.7 (citing *Cheney*, 755 S.W.2d at 130).

[10] *Id.* at 504.

[11] *Id.* at 504-05.

[12] *Id.* at 504.

a single benefit.[13] Consequently, the court of appeals held that the gravamen of the offense of "false statement to obtain property or credit" is the property or credit sought, and multiple false statements used to obtain a single loan are simply alternate means of committing the same offense.[14]

## II. ANALYSIS

In 2005, the offense of "false statement to obtain property or credit" was defined in § 32.32 as follows:

> A person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit for himself or another.[15]

In order to decide how many offenses appellant committed, we must determine the allowable unit of prosecution for the statute that proscribes the offense.[16] Although this inquiry resolves the double

---

[13] *Id.* at 504-05.

[14] *Id.* at 505.

[15] T EX. PENAL CODE § 32.32(b) (West 2004). Under the current version of the statute the phrase "for himself or another" has been replaced by a comma and the phrase "including a mortgage loan." TEX. PENAL CODE § 32.32(b) (current).

[16] *Ex parte Hawkins*, 6 S.W.3d 554, 555 (Tex. Crim. App. 1999) (whether actor's assault on two people while stealing one item of property constitutes one robbery or two); *Vineyard v. State*, 958 S.W.2d 834, 838 (Tex. Crim. App. 1998) (whether possession of a videotape and a photograph at the same time in one location constitutes one offense of child pornography or multiple offenses); *Iglehart v. State*, 837 S.W.2d 122, 127 n.6 (Tex. Crim. App. 1992) (whether taking distinct items of property belonging to two different victims at the same residence constitutes one theft or two). A different, but related "allowable unit of prosecution" inquiry occurs when the same statutory section lists multiple methods of committing an offense, and this Court is called upon to determine whether these different methods of commission are different offenses or are merely alternate means of committing the same offense. *See Gonzales v. State*, 304 S.W.3d 838, 848 (Tex. Crim. App. 2010) (whether penetration of anus and sexual organ are different aggravated sexual assault offenses or alternate means of committing the same offense). *Ex parte Cavazos* arguably involved different statutory methods of committing the same offense—burglary with intent to commit theft and burglary with intent to commit sexual assault. 203 S.W.3d 333, 335 (Tex. Crim. App. 2006). However, the question addressed was whether a single entry into a single residence could give rise

jeopardy analysis, it is purely one of statutory construction.[17]

## A. General Principles of Statutory Construction

In construing a statute, we look first to its literal text.[18] When examining the literal text, "we read words and phrases in context and construe them according to the rules of grammar and usage."[19] If the statutory language is ambiguous, or leads to absurd results that the Legislature could not possibly have intended, then we may consult extra-textual sources of information.[20]

In this process, we consider any prior judicial construction of the statute. When that construction is longstanding, there is some force to the argument that, if the Legislature did not agree with the judicial interpretation, it would have acted to change the statute.[21] Of course, a judicial construction of a statute is the law, unless we decide to overrule it, and the interests of *stare decisis* are at their height for judicial constructions of legislative enactments upon which the parties rely for

---

to two burglary prosecutions when there were two victims of the offense. *Id.* at 336-37.

[17] *Cavazos*, 203 S.W.3d at 336; *Hawkins*, 6 S.W.3d at 556-59; *Vineyard*, 958 S.W.2d at 837; *Iglehart*, 837 S.W.2d at 127. In *Hawkins*, we noted that "fascinating and difficult" unit of prosecution questions can arise, "but they are ultimately questions of substantive law, questions on which the Double Jeopardy Clause is wholly agnostic. The Clause takes substantive criminal law as it finds it." 6 S.W.3d at 557.

[18] *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991); *see also Cavazos*, 203 S.W.3d at 336-37 (deciding issue solely on "plain meaning" of the burglary statute); *Iglehart*, 837 S.W.2d at 127 (same, finding "the plain language of the theft statute to be clear and unambiguous").

[19] *Lopez v. State*, 253 S.W.3d 680, 685 (Tex. Crim. App. 2008); *Boykin*, 818 S.W.2d at 785 (courts must determine the plain meaning of a statute "when read using the established canons of construction relating to such text").

[20] *Boykin*, 818 S.W.2d at 785.

[21] *State v. Medrano*, 67 S.W.3d 892, 902 (Tex. Crim. App. 2002).

guidance in conforming to those enactments.[22]

## B. Unit of Prosecution

Absent an explicit statement that "the allowable unit of prosecution shall be such-and-such," the best indicator of legislative intent with respect to the unit of prosecution seems to be the focus or "gravamen" of the offense.[23] In *Cavazos* and *Hawkins*, different outcomes were reached because of the gravamen of the offense at issue in each case. The offense in *Cavazos* was burglary, with two intended victims but only one entry into a home.[24] We held that this single entry could give rise to only one burglary conviction because the gravamen of the offense of burglary is the "unlawful entry" rather than the victim of the crime.[25] The offense in *Hawkins* was robbery, with two victims but only one item stolen.[26] We held that two robberies were committed because the gravamen of the offense of robbery is the assaultative conduct against the victim, not theft.[27]

As the court of appeals acknowledges, we held in *Cheney* that the gravamen of the offense of "false statement to obtain property or credit" is the act of making a materially false statement

---

[22] *Busby v. State*, 990 S.W.2d 263, 268 (Tex. Crim. App. 1999).

[23] *See Cavazos*, 203 S.W.3d at 337; *Hawkins*, 6 S.W.3d at 559-60. *See also Gonzales*, 304 S.W.3d at 848 (citing *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008), and remarking that we recently "signaled" as much in determining whether the Legislature intended to define one or multiple offenses when it promulgates alternate methods of commission).

[24] 203 S.W.3d at 335.

[25] *Id.* at 337.

[26] 6 S.W.3d at 555.

[27] *Id.* at 559-60.

rather than the acquisition of property or credit.[28] A holding that the focus of the offense is upon the materially false statement suggests that multiple materially false statements would give rise to multiple offenses, even if the multiple statements were made in connection with only one application for credit.

In distinguishing this case from *Cheney*, the court of appeals correctly noted that the issue in *Cheney* was whether statutes proscribing felony theft and making a false statement to obtain property or credit were *in pari materia*. But regardless of the specific legal issue, *Cheney* construed the meaning of § 32.32, and the double jeopardy claim before us turns upon the meaning of § 32.32. Whether statutory construction occurs in a double jeopardy context or an *in pari materia* context, the issue is the same: the meaning of the statute.

The next question is whether the court of appeals was correct in its assessment that *Cheney* no longer controls because the Legislature changed the gravamen of a § 32.32 offense by amending the punishment provisions to include various ranges that depend on the value of the property or credit sought. Although *Cheney* referred to proof of value as a critical factor in the offense of theft that was not required for an offense under § 32.32, this was a brief reference and it was not the primary basis for the holding in that case.[29] Primarily, *Cheney* contrasted § 32.32's focus on deception with the theft statute's focus on acquisition.[30] Moreover, it is unclear that the reference

---

[28] *Cheney*, 755 S.W.2d at 129 ("It is the act of *making* such statements that is the gravamen of the offense, while the actual acquisition of property or credit is not a required element of the offense . . . . [T]he 'forbidden conduct' . . . is the intentional or knowing *making* of a materially false or misleading statement to obtain property or credit. The offense is complete once the written, deceptive statement relevant to obtaining property or credit is made.") (emphasis in original).

[29] *Id.* at 130.

[30] *Id.* at 129-30.

to proof of value has any relationship to *Cheney*'s gravamen discussion because an *in pari materia* analysis can take into account not only the gravamen of the offenses being compared but also any differences in their respective punishments.[31] The main, if not sole, thrust of *Cheney*'s gravamen discussion was § 32.32's focus on deception (rather than acquisition).

And the punishment subsection in § 32.32 is separate from the text that defines the elements of the offense.[32] A unit-of-prosecution inquiry necessarily involves an interpretation of the offense's elements. Separate punishment provisions are something an appellate court can consider in a unit-of-prosecution inquiry, but they should carry little weight in the analysis. In this case, more weighty factors are available for consideration.

We glean one such factor from the holdings of *Cavazos* and *Hawkins*, and from *Cheney* itself. In *Cavazos*, we held that unlawful entry is considered the gravamen of burglary because "[t]he offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed."[33] In *Hawkins*, we held that assault is the gravamen of the offense of

---

[31] *See Burke v. State*, 28 S.W.3d 545, 548 (Tex. Crim. App. 2000) (quoting *Cheney*, 755 S.W.2d at 130, for the proposition that provisions are not *in pari materia* when they "are two different legislative acts having different elements of proof, different penalties and obviously designed to serve different purposes and objectives."); *Ex parte Wilkinson*, 641 S.W.2d 927, 932 (Tex. Crim. App. 1982) (statutes are not *in pari materia* when they "are contained in different legislative acts, provide for different penalties, and are designed to serve different purposes and objectives").

[32] *See* TEX. PENAL CODE § 32.32(b), (c) (West 2004).

[33] *Cavazos*, 203 S.W.3d at 337; *see also* TEX. PENAL CODE § 30.02(a) (variously proscribing entry or concealment "with intent" to commit other offenses or accompanied by an attempt or the actual commission of other offenses).

robbery because the assault must be complete, but the "theft only has to be attempted."[34] In *Cheney*, we emphasized that the false statement part of § 32.32 was the gravamen of the offense because the statute penalized the "making" of a false statement but did not require the "actual acquisition" of property or credit.[35] These holdings suggest that the unit of prosecution tends to be defined by the offense element that requires a completed act.

Another aid in determining the focus or gravamen of an offense is grammar.[36] One aspect of grammar is the "eighth grade grammar" approach suggested by Judge Cochran as "a general rule of thumb" for determining legislative intent.[37] Under the "eighth grade grammar" approach, the language that constitutes the gravamen of the offense consists of the subject, the main verb, and the direct object.[38] "Generally, adverbial phrases, introduced by the preposition 'by' . . . are not the gravamen of the offense."[39] Analyzing a § 32.32 offense under this approach reveals that the subject is "a person," the verb is "makes," and the direct object is "a materially false or misleading written statement." The phrase "to obtain property or credit for himself or another" is an adverbial phrase

---

[34] *Hawkins*, 6 S.W.3d at 559-60; *see also* TEX. PENAL CODE §§ 29.02(a) (when assault occurs "in the course of committing theft"), 29.01(1) ("in the course of committing theft" means "conduct that occurs in an attempt to commit, during the commission, or in immediate flight after the attempt or commission of theft").

[35] 755 S.W.2d at 129.

[36] *Gonzales*, 304 S.W.3d at 848 (citing *Huffman v. State*, 267 S.W.3d at 907).

[37] *Huffman*, 267 S.W.3d at 906.

[38] *Id.* (quoting *Stuhler v. State*, 218 S.W.3d 706, 718 (Tex. Crim. App. 2007), in turn quoting *Jefferson v. State*, 189 S.W.3d 305, 315-16 (Tex. Crim. App. 2006) (Cochran J., concurring)).

[39] *Id.*

modifying "makes."[40]   In any event, the fact that "obtaining property or credit" is part of a prepositional phrase rather than the main structure of the sentence suggests that it is not the gravamen of the offense.

Another aspect of grammar is that a legislative reference to an item in the singular suggests that each instance of that item is a separate unit of prosecution.[41]  In *Vineyard*, we explained that the use of the singular for "film image" in the pornography statute indicated that each film image was a separate unit of prosecution.[42]   The use of the singular was also part of the rationale for our previous holdings in *Rathmell*[43] and *Iglehart*.[44]  In *Rathmell*, we construed a statute proscribing the death of an individual to allow separate prosecutions for causing the death of more than one individual in a single transaction.[45]  In *Iglehart*, we held that the theft statute allowed for multiple prosecutions when items were taken from multiple owners because the statute made it "*an offense*" to take property from "*the owner*."[46]  As with the homicide, theft, and pornography statutes, § 32.32 uses the singular: proscribing the making of "a materially false or misleading written statement."[47]

Similarly, a number of other jurisdictions have employed what is sometimes known as the

---

[40]  The phrase could conceivably be an adjectival phrase modifying "statement."

[41]  *Vineyard*, 958 S.W.2d at 837.

[42]  *Id.*

[43]  *Ex parte Rathmell*, 717 S.W.2d 33 (Tex. Crim. App. 1986).

[44]  *Vineyard*, 958 S.W.2d at 837.

[45]  717 S.W.2d at 35; *see also Vineyard*, 958 S.W.2d at 837 (discussing *Rathmell*).

[46]   837 S.W.2d at 127 (emphasis in original); *see also Vineyard*, 958 S.W.2d at 837 (discussing *Iglehart*).

[47]T  EX. PENAL CODE § 32.32(b) (West 2004).

"a/any test": The use of "a" before the proscribed conduct means that the statute unambiguously

proscribes each instance of the conduct while the use of "any" is ambiguous, and may or may not

proscribe each instance of conduct, depending on the context of the entire statute.[48] One court has

criticized the employment of this test[49] while another has cautioned that the "test" is a "valuable but

nonexclusive means to assist courts in determining the intended unit of prosecution" that should not

---

[48] *United States v. Freisinger*, 937 F.2d 383, 388-90 (8ᵗʰ Cir. 1991) ("A statute that prefaces the object of the offense with the word 'a' unambiguously authorizes singular units of prosecution."); *United States v. Vargas-Castillo*, 329 F.3d 715, 721-22 (9ᵗʰ Cir. 2003) (quoting *United States v. Alverson*, 666 F.3d 341, 347 (9ᵗʰ Cir. 1982): "Use of the article 'a' stands in marked contrast to language in other statutes that have been interpreted to preclude prosecution for each object of the offense. Unlike 'any,' the article 'a' cannot be said to fully encompass plural activity. Rather, it encompasses singular, individualized activity and unambiguously defines the unit of prosecution in singular terms.") (citations and brackets omitted); *Ex parte State of Alabama*, 883 So. 2d 717, 723 (Ala. 2003) (quoting R. Owens, *Alabama's Minority Status: A Single Act Injuring Multiple Persons Constitutes Only a Single Offense*, 16 Cum. L. Rev. 85, 105-06 (1985-86): "How, then should the unit of prosecution be described so that an intent to allow multiple convictions is clear and unequivocal? Instead of using the word 'any' to describe the unit of prosecution, the singular words 'a' or 'another' should be used."); *Grappin v. State*, 450 So.2d 480 (Fla. 1984) (quoting *Alverson*); *State v. Kidd*, 562 N.W.2d 764, 765-66 (Iowa 1997) ("An" is a euphonic mutation of the article "a." Concluding that "a" denotes a singular and that the statute referring to "an offensive weapon" was not ambiguous regarding each weapon being a unit of prosecution); *State v. Ose*, 156 Wn. 2d 140, 146-48, 124 P.3d 635, 637-39 (2005) (legislature unambiguously defined the unit of prosecution as one count per access device by using the indefinite article "a" in the clause "a stolen access device"); *People v. San Nicolas*, 2001 Guam 4, 20-22 (2001) ("statutes using the singular words 'a' or 'another' reveal the intent that each victim be the appropriate unit of prosecution"—statute proscribed subjecting "*a child* to cruel and unusual treatment") (emphasis in original). *See also State v. Mather*, 264 Neb. 182, 195-97, 646 N.W.2d 605, 616 (2002) (Wright, J., dissenting) (dissenting to majority's finding multiple units of prosecution when the relevant term was preceded by the word "any" and arguing that the majority's interpretation would have been supported if the statute had instead used the word "a"); *State v. Ravell*, 155 N.H. 280, 285-86, 922 A.2d 685, 689-90 (2007) (Duggan, J., dissenting) (same). *See also Mather*, 264 Neb. at 186-89, 646 N.W.2d at 610-12 ("any" denotes a singular in the context before the court, allowing for multiple prosecutions); *Ravell*, 155 N.H. at 282-83, 922 A.2d at 687-88 (same); *State v. Green*, 207 W.Va. 530, 537-38, 534 S.E.2d 395, 402-03 (2000) (same).

[49] *United States v. Lindsay*, 985 F.2d 666, 674-75 (2ᵈ Cir. 1993) (criticizing *Freisinger*).

be applied "mechanistically."[50]  We do not adopt the "a/any" test as a strict rule, but we find it to be a helpful tool in statutory analysis.  The presence of "a" before the term "materially false or misleading statement" in § 32.32 is at least some indication that each "materially false or misleading statement" constitutes a separate unit of prosecution.

Finally, we observe that, in connection with an analogous federal statute proscribing the submission of false statements or documents in connection with a Federal Housing Administration loan application, two federal cases have held that each false statement or document was a separate unit of prosecution.[51]

---

[50] *Bautista v. State*, 863 So. 2d 1180, 1188 (Fla. 2003).  *But see id.* at 1188 n.9 ("In fact, only if the criminal statute in question uses the article 'a' is the legislative intent as to the intended unit of prosecution actually determined by the 'a/any' test.  This is because the use of the article 'a' is unambiguous.").

[51]  *Moeller v. United States*, 378 F.2d 14, 15 (5th Cir. 1967) (rejecting the defendant's contention that two false statements made in a single application were but one offense and holding that "the offense defined by the statute with which he was charged is the making of false statements"); *Tripp v. United States*, 381 F.2d 320, 321 (9th Cir. 1967) (rejecting the defendant's complaint that the government could not submit "a separate count on each false document even where several of the documents were submitted in support of a single application" because "the filing of each false document would constitute a crime").  At the time these cases were decided, the federal statute provided:

> Whoever, for the purpose of obtaining any loan or advance of credit from any person, partnership, association, or corporation with the intent that such loan or advance of credit shall be offered to or accepted by the Federal Housing Administration for insurance, or for the purpose of obtaining any extension or renewal of any loan, advance of credit, or mortgage insured by such Administration, or the acceptance, release, or substitution of any security on such a loan, advance of credit, or for the purpose of influencing in any way the action of such Administration, makes, passes, utters, or publishes any statement, knowing the same to be false, or alters, forges, or counterfeits any instrument, paper, or document, or utters, publishes, or passes as true any instrument, paper, or document, knowing it to have been altered, forged, or counterfeited, or willfully overvalues any security, asset, or income, shall be fined not more than $5,000 or imprisoned not more than two years, or both.

We conclude that the appropriate unit of prosecution is the "materially false or misleading statement," not the loan application. Each "materially false or misleading statement" constitutes a separate offense.

The judgment of the court of appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

Delivered: September 29, 2010
Publish

---

*Moeller*, 378 F.2d at 14 n.1 (quoting 18 U.S.C.A. § 1010).