AFFIRM; Opinion Filed March 15, 2013.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-01028-CR

ISAAC OHONBA, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 3
Dallas County, Texas
Trial Court Cause No. MB10-05557-C

## MEMORANDUM OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion by Justice Moseley

Isaac Ohonba was indicted for the offense of making a false statement to a law enforcement employee. He waived his right to a jury and the case was tried to the court. The trial court found him guilty and assessed punishment at 180 days in jail and a $2,000 fine. The trial court suspended sentence and placed Ohonba on community supervision for twelve months. In a single issue, Ohonba contends the evidence is legally insufficient because of a material variance between the indictment allegations and the proof at trial. The background of the case and the evidence adduced at trial are well known to the parties; thus, we do not recite them here in detail. Because all dispositive issues are settled in law, we issue this memorandum opinion. TEX. R. APP. P. 47.2(a), 47.4. We affirm the trial court's judgment.

Ohonba, a Dallas Independent School District teacher, reported to the DISD Police Department that he had been attacked one morning by five Hispanic students. He gave a statement to a DISD Police Department employee while he was in the emergency room. The police department later determined the statement was false, and Ohonba was indicted for making a false statement to an employee of a law enforcement agency.

The indictment alleged that Ohonba:

with intent to deceive, knowingly [made] to J. Liebbe a false statement, to-wit: "the five students, all male, all Hispanic began to hit me. They actually pushed me and some hit me and I fell to the ground and this is when I hit my head on the tree. I then became unconscious. My head was hurting and I was in so much pain as the five male Hispanic students were punching me very hard throughout their brutal and physical attack on me.", and the said J. Liebbe was an employee of a law enforcement agency, namely, Dallas Independent School District Police Department, and was authorized by said agency to conduct said investigation, and the defendant knew that the said J. Liebbe was conducting said investigation, and the statement was material to the investigation in that the accused students would likely be charged, detained and disciplined based on the defendant's false allegations of assault.

Ohonba contends the proof at trial showed that the statement was given to Melissa Juarez, a civilian employee of the DISD Police Department, not to Jeremy Liebbe.

We review the evidence under the legal sufficiency standard of review. *See Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011), *cert. denied*, 132 S. Ct. 1763 (2012). In a legal sufficiency review, "we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Adames*, 353 S.W.3d at 860. This standard "recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence." *Id.* We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *See id.* (citing *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). However, "a hypothetically correct charge need not incorporate allegations

that give rise to immaterial variances." *Gollihar v. State*, 46 S.W.3d 243, 256 (Tex. Crim. App. 2001). The hypothetically correct charge standard applies to both jury and non-jury trials. *Malik*, 953 S.W.2d at 240.

A variance occurs when there is a discrepancy between the allegations in the indictment and the proof at trial. *Gollihar*, 46 S.W.3d at 246. Variances can be classified into three categories. First, a variance involving statutory language that defines the offense always renders the evidence legally insufficient to support the conviction. *Johnson v. State*, 364 S.W.3d 292, 298 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 536 (2012). Second, a variance involving a non-statutory allegation that describes an "allowable unit of prosecution" element of the offense may or may not render the evidence legally insufficient, depending upon whether the variance is material. *Id.* Finally, other types of variances involving immaterial non-statutory allegations do not render the evidence legally insufficient. *Id.*

We analyze the materiality of defects in indictments and jury charges by looking to the focus or gravamen of the offense and the hypothetically correct jury charge under the specific indictment or information. *Johnson*, 364 S.W.3d at 297; *Byrd v. State*, 336 S.W.3d 242, 250 (Tex. Crim. App. 2011).

Examining the elements of the offense of making a false report to a law enforcement employee, a person commits such an offense if, with intent to deceive, he knowingly makes a false statement that is material to a criminal investigation and makes it to "any employee of a law enforcement agency that is authorized by the agency to conduct the investigation and that the actor knows is conducting the investigation." TEX. PENAL CODE ANN. § 37.08(a)(2) (West Supp. 2012).[1]

---

[1]The legislature amended section 37.08 in 2011 to add federal special investigators to section 37.08(a)(1). *See* Act of May 24, 2011, 82nd Leg., R.S., ch. 839, § 3, 2011 Tex. Gen. Laws 2110, 2111. Subsection 37.08(a)(2) was not amended. We refer to the law as it existed at the time of the offense.

The focus or gravamen of this offense is the making of a false statement to "any employee" under the circumstances described in the statute, not the particular employee to whom it is made. *See Jones v. State*, 323 S.W.3d 885, 889 (Tex. Crim. App. 2010) (gravamen of offense of making a material false statement to obtain credit is the making of a false statement, not obtaining credit); *see also Harris v. State*, 359 S.W.3d 625, 630–31 (Tex. Crim. App. 2011) (best indicator of legislative intent regarding allowable unit of prosecution is gravamen or focus of offense); *Huffman v. State*, 267 S.W.3d 902, 907 (Tex. Crim. App. 2008) (discussing aids to identifying the gravamen of an offense). Thus, the allowable unit of prosecution in this case is a false statement made to any employee of a law enforcement agency authorized to conduct the investigation and whom the actor knows is conducting the investigation.

Here the record indicates a single incident was under investigation: Ohonba's alleged assault by several students. One student, Andy Morales, testified he was walking with Ohonba that morning, slipped on some mud, grabbed onto Ohonba, and Ohonba slipped and hit his head on a tree. Ohonba got up, took Morales's school identification and turned him over to the school security officer. Ohonba went to the nurse's office and was then transferred to the emergency room. Melissa Juarez, a DISD Police Department employee, testified she was riding with Sergeant Tapia, a DISD police officer, when they were dispatched to the hospital to take a statement from a teacher who had been assaulted. Tapia and Juarez introduced themselves to Ohonba and asked if they could take his statement about the incident that morning. Tapia was in and out of the examination room because of another call, but Ohonba agreed to give a statement to Juarez.

Because Ohonba was injured, Juarez offered to write the statement and let Ohonba review and sign it. Ohonba agreed and told Juarez he had been walking into school that morning and was attacked by five Hispanic students who hit him several times, causing him to fall and hit

–4–

his head on a tree. Ohonba reviewed the handwritten statement and made several minor corrections. He then signed the statement and Juarez signed it as a witness. After taking the statement, Juarez told Ohonba she would turn it over to the police department headquarters and an investigator would be assigned. Juarez testified she was not in charge of the investigation, one of the detectives handled the investigation.

The next day, Ohonba typed and had notarized a similar statement about the incident, apparently at the request of Liebbe. The indictment quotes parts of both statements. Ohonba testified that school district rules required a teacher involved in an incident to give a statement. He also referred to this requirement in the typed statement.

Liebbe testified he is a detective in the DISD police department and investigated Ohonba's complaint. Liebbe said Ohonba's statement was material to the investigation. Based on the investigation, Liebbe determined the incident was an accident not an assault. Liebbe explained that Ohonba applied for and received assault leave, a type of fully paid leave for employees who are assaulted at work.

Ohonba contends he did not have adequate notice from the indictment to prepare his cross-examination because only Liebbe was identified, not Juarez. We disagree. Juarez's name is listed in the statement and she signed it as a witness. There is no indication in the record that Ohonba did not know that he gave the statement to Juarez or that he was misled by the indictment. Ohonba's defense did not contend he did not make the statement or that he gave it to someone who was not a law enforcement employee. He admitted giving the statement and testified at trial to essentially the same facts as in his statement. He argued the statement was true, or at least was not knowingly false.

Ohonba argues he could be subject to double jeopardy based on the same elements test identified in *Blockburger v. United States*, 284 U.S. 299 (1932). He claims he could face another indictment for making the same statement to Juarez. We disagree.

First, courts do not apply the *Blockburger* same elements test "when the double-jeopardy issue involves the allowable unit of prosecution, as it may when it comes to necessary descriptions of a statutory element that is the gravamen of the offense." *Byrd*, 336 S.W.3d at 257. As discussed above, the gravamen and allowable unit of prosecution under section 37.08 is the making of a false statement to any employee of a law enforcement agency authorized to conduct the investigation.

Second, Ohonba is not in danger of being prosecuted again for the same offense based on his February 4, 2010 statement. *See Gollihar*, 46 S.W.3d at 258 (citing *United States v. Apodaca*, 843 F.2d 421, 430 n.3 (10th Cir. 1988) (entire record, not just indictment, may be referred to in protecting against double jeopardy in event of subsequent prosecution)). The indictment and the record at trial indicate Ohonba was tried for making a false statement to a law enforcement employee on February 4, 2010. The State would not be able to prosecute him again for the same statement.

Here, because the false statement was made to a law enforcement employee authorized to take the statement (Juarez was dispatched with an officer to take the statement) and known by Ohonba to be conducting that part of the investigation (Juarez and Tapia introduced themselves and asked to take a statement about the incident that morning), we conclude the variance in the name of employee to whom the statement was made did not deprive Ohonba of notice and would not subject him to multiple prosecutions for the same offense; thus the variance was not material.

Considering all the evidence (including that summarized above) in the light most favorable to the verdict, we conclude a rational trier of fact could have found Ohonba guilty of

the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Adames*, 353 S.W.3d at 860. Thus, we overrule Ohonba's sole issue.

We affirm the trial court's judgment.


JIM MOSELEY
JUSTICE


Do Not Publish
TEX. R. APP. P. 47.2(b)
111028F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

ISAAC OHONBA, Appellant

No. 05-11-01028-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the County Criminal Court No. 3, Dallas County, Texas
Trial Court Cause No. MB10-05557-C.
Opinion delivered by Justice Moseley.
Justices Fillmore and Myers participating.

Based on the Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

Judgment entered this 15th day of March, 2013.

_____

JIM MOSELEY
JUSTICE